Denison Smith, administrator, *vs.* Talitha Burnham and Ebenezer Burnham.

*Held,* that it is sufficient, if the return of inquisitors upon a distracted person, show in substance that they find the fact of his insanity, without stating specially, in the language of the statute, that *they judge him to be incapable* of taking care of himself.

*Held,* that third persons resisting a title derived from the guardians of a lunatick, or distracted person, cannot take advantage of the fact, that it does not appear of record, that the lunatick had notice of the inquisition upon him, or of the appointment of the guardians over him; especially where the guardianship has continued several years, without objection on the part of the lunatick.

The judge of probate has power to appoint other guardians of a lunatick, in lieu of those resigning, &c. without a new inquisition.

*Held,* that, the judge of probate having a competent jurisdiction for the purpose, his licence to the guardians of a lunatick, to sell his real estate, is sufficient to protect a purchaser under such sale, although the record does not show *by whom* the debts were contracted, for which the sale was authorized.

*Held,* that a deed of sale, by the guardians of a lunatick, of his real estate, is good to convey the title of such lunatick, notwithstanding it does not appear, that previous notice was given to *any one,* of an intention to apply to the judge of probate for licence to make such sale.

THIS was an action of ejectment, brought to recover the seizin and possession of lot No. 11, in the 7th range of lots in Williamstown. Plea, *Not Guilty.*

On the trial of the issue, there was a verdict for the plaintiff; and the defendants took the following

EXCEPTIONS.

The plaintiff read in evidence letters of administration, and proved the defendants to have been in possession of the lot in question, when the writ was issued and served.

He, also, read in evidence a deed of said lot, to the plaintiff's intestate, from *Joel Bass* and *Enoch Burnham,* guardians of one *Rufus Burnham, a lunatick,* executed, or pretended to be executed, under, and by virtue of an order of sale, from the

*Orange,*
*February,*
1826.

Smith, Adm'r
*vs.*
Burnham
*et al.*

judge of probate for the district of Randolph, within whose district the land lies.

Then to show that the grantors in said deed had power and authority to execute the said deed, and thereby to convey said land to his intestate, he offered in evidence duly certified copies of probate records, in the probate office for the district of Randolph, which were as follows, viz.

1st. An application of *Enoch Burnham*, a brother of Rufus Burnham, to the judge of probate, dated August 25, 1804, representing that the said Rufus was *insane*, whereby he was rendered incapable of taking care of himself, family, and property; and praying that a guardian or guardians, might be appointed over him, as the law directs.

2d. A commission of inquisition, upon said Rufus Burnham, issued by said judge of probate, dated September 3d, 1804, and addressed to the selectmen and civil authority of said Williamstown—and a return thereon, which were as follow:

STATE OF VERMONT, ⎱ To the selectmen and civil authority of
*Probate District of* ⎰ Williamstown, in said district,
*Randolph*, ss. GREETING.

Whereas, Rufus Burnham, of said Williamstown, is represented to me to be insane, whereby he is rendered incapable of taking care of himself and family; and it is requested by his friends that a guardian may be appointed over the said Rufus, as the law in such case directs: therefore, agreeable to law, you are hereby requested to make inquisition into the situation and circumstances of the said Rufus Burnham, and report to me your opinion in writing, under your hands, or a majority of you, as soon as may be. Given under my hand at Williamstown, Sept. 3, A. D. 1804.

JONATHAN FISK, *Judge of Probate.*

*Williamstown, September 4, 1804.*

At a meeting of the selectmen and authority of said town, and examining the above request and situation of the above said Burnham, give it as our opinion, that the above request is right and reasonable.

JOSEPH CRANE, *Justice Peace.*
ELIJAH WALLCUT, ⎱ *Selectmen.*
HENRY JOHNSON, ⎰
JARED KIMBALL, *Constable.*

3d. A record of the appointment of *Daniel Martin* and *Joel Bass*, as guardians of said Rufus, *as a lunatick*, dated November 13, 1804.

4th. An application to the judge of probate from the said *Daniel Martin, Joel Bass*, and one *Enoch Burnham*, their bail, dated April 2, 1806, and praying that said Martin might be discharged from said office of guardian; and that said Joel Bass might be sole guardian of said Rufus.

5th. A record of the discharge of the said Martin, from his said trust, by the judge of probate, in pursuance of said request.

Orange,
February,
1826.

Smith, Adm'r
vs.
Burnham
et al.

6th. An application to said judge, from the said Joel Bass, dated March 4, 1807, representing that the duties of said trust were burthensome; and praying that a joint guardian may be appointed to serve with him.

7th. A record of the appointment of the said Enoch Burnham, on the same day, to be joint guardian with said Bass, in pursuance of the above request.

8th. A record of an application to said judge by the said Joel Bass and Enoch Burnham, on the 19th day of November, 1811, for licence to sell the real estate of said lunatick, and of the granting of said licence, which was as follows :

*State of Vermont.*—At a court of probate holden at Williamstown, in and for the district of Randolph, on the 19th day of November, A. D. 1811, when came Joel Bass and Enoch Burnham, guardians, and represented to said court, that the estate of Rufus Burnham was in debt the sum of fourteen hundred and seventy-five dollars more than the personal estate was sufficient to pay : therefore prayed for licence to sell the real estate to raise the said sum ; whereupon licence was granted to them to sell real estate of the said Rufus Burnham, to raise the aforesaid sum of fourteen hundred and seventy-five dollars, they being sworn as the law directs.   Also, an order issued to them to sell such personal estate of the said Rufus, as they shall judge will be for the best interest of said estate.

*Attest,* Jonathan Fisk, *judge of probate.*

9th. A *certificate* from the register of probate in said district, that in the guardianship account, rendered by the said Joel Bass and Enoch Burnham, on the 25th day of April, 1812, they had charged themselves for cash received, for the farm sold according to order, the sum of $1610,00.

10th. A record of the exhibition of the said guardians' account to the judge of probate, on the 27th day of March, 1815, and of his allowance and approval of the same—the last paragraph of which was as follows : "And at the court last aforesaid, it appearing that all the property belonging to the said Rufus, that came to the hands of said guardians, was expended and accounted for by said guardians, according to law ; thereupon the said guardians prayed to be discharged from the office of guardians to said Rufus ; which prayer appearing reasonable, the said guardians were thenceforth discharged from the duties of said office."

The defendants objected to said copies being read in evidence to the jury, on the trial of said issue, because, as it was contended, said copies showed no power or authority in said grantors to make said deed ; but said Court overruled said objection, and decided, that said copies do show power and authority in said grantors to make said deed ; and permitted said copies to be read in evidence to the jury, to support the issue on the part of the plaintiff: whereupon the jury returned a verdict for

the plaintiff. The defendants except to this opinion and decision of the Court.

*Orange,*
*February,*
*1826.*

Smith, Adm'r
*vs.*
Burnham
*et al.*

(*Allowed*) ASA AIKENS, *Judge.*

*Baylies,* for the defendants, in support of the exceptions, contended, that the evidence was improperly admitted to the jury, because the records do not show, 1st. that the said Joel Bass and Enoch Burnham were ever legally appointed guardians of the said Rufus Burnham. Nor, 2dly, that they were legally empowered to sell the land of the said Rufus Burnham.

1. The records do not show, that the said Joel Bass and Enoch Burnham were legally appointed guardians.

The judge of probate derives his power from the first section of the act, entitled "An act, for the relief of *idiots* and *distracted persons.*" This says the judge "shall have power, upon the request of the friends and relations of the distracted person, or, upon the application of any respectable freeholder of the town in which such distracted person lives, to direct the selectmen and civil authority of such town, to make inquisition thereinto ; and, if the person said to be distracted, shall be adjudged by the selectmen and civil authority aforesaid (or a major part of them) to be incapable of taking care of himself, and shall certify the same under their hands to the judge of probate; the said Judge is hereby empowered to appoint some suitable persons to be guardians to such distracted person, directing- and empowering such guardians to take *care of the person* and estate, both real and personal, of such person, &c."—1 *Stat.* 403, *edit. of* 1808.

By this law there are four requisites :

1. A representation of the distraction, and a request to the judge to have guardians appointed.

2. Upon such request, the judge shall direct the selectmen and civil authority, to make inquisition of and concerning the distraction.

3. If upon *such inquisition* the inquisitors, or a major part of them, *shall adjudge such person to be incapable of taking care of himself, and shall certify the same under their hands to the judge of probate,* then,

4. The said Judge is authorized to appoint some suitable persons guardians, and empower them to take *care of the person and estate* of such distracted person.

But before the judge has power to appoint, the three first requisitions must be complied with : they may be considered conditions precedent, which must be performed before the power is exercised.

Where a statute grants a special power, *affecting the property* of individuals, it must be strictly pursued, and it must appear on the face of the proceedings, that the directions of the act have been strictly observed.—*See* 4 *Dane,* 808, § 41.—3 *Johns. C.* 107. —*Cowper* 26.

Orange,
February,
1826.

Smith, Adm'r
vs.
Burnham
et al.

To appoint guardians is the exercise of extraordinary powers, which affects not only the property, but the liberty of the person. If any statute should be construed strictly, it is this. But before any person can be deprived of his property or liberty, by the appointment of guardians under this act, he is to have notice and day in court, before the inquisitors, at the time of the inquisition, or subsequently before the judge of probate. If he has not such day in court, the appointment of guardians is void.—*See* 14 *Mass. Rep.* 222.

He contended, that no one of these legal requisites had been complied with.

1. That the application was made by Enoch Burnham *alone*, as a friend and brother, and not as a *freeholder ;* whereas, the statute authorizing the friends and relatives to make the application, speaks of them in the *plural.*

2. The commission of inquisition was illegal, in that it did not confine the inquisitors to the proper object of inquiry. The word *insane* is not used in the statute. *Sane* signifies sound or healthy, and may be applied to body or mind. *Insane* is opposed to sane, and does not always signify the same as the word "*distraction*," used in the statute. If Rufus Burnham was not *sane*, or sound in body, it was no reason for appointing a guardian ; but, if he was a "*distracted person*," it was reason, if the degree of distraction was such, as *to render him incapable of taking care of himself ;* and the inquisitors were to judge of this *only*, and certify it under their hands in writing, to the judge. But the aforesaid *mandate* does not direct them to do this in particular ; but to inquire, generally, into the *situation* and *circumstances* of the said Rufus Burnham, which is not sufficient.

3. The return is totally defective. It is not in compliance with the statute. It does not show that the inquisitors *adjudged Rufus Burnham to be a distracted person, incapable of taking care of himself.* And without such adjudication, certified under their hands, the judge had no power to appoint guardians. It only certifies to the judge, that his *request* of them, to inquire into the situation and circumstances of Burnham, is right and reasonable ! It does not appear that Rufus Burnham had any notice of the inquest, or any day in court before the judge of probate.

4. That *Daniel Martin* and Joel Bass having been appointed the guardians, and having accepted the trust, the power of the judge was at an end, and other guardians could not be appointed, without a new application and inquisition for that purpose.

*Secondly.* If the appointment of the guardians had been legal, the records do not show that they were legally empowered to sell the land of the said Rufus Burnham.

1. The 3d section of the aforesaid act (1 *Stat.* 404, *edit. of* 1808,) says "The guardians shall be subject to the payment of all just debts, owing by such person, which *were contracted before his distraction*, out of his personal estate ; or, in case that be insufficient, then out of the real estate, *in the way and manner execu-*

Orange,
February,
1826.

Smith, Adm'r
vs.
Burnham
et al.

*tors and administrators are empowered to make sale of the real estate of deceased persons.*" It is obvious the probate court can authorize a sale of real estate by the aforesaid law, only, where the personal property is insufficient, and where the debts *were contracted by the ward before his distraction.* If the debts were contracted by the guardians themselves, the probate court cannot empower them to sell the real estate to pay such debts—and they must be empowered to sell "*in the same way and manner executors and administrators are empowered to make sale of the real estate of deceased persons.*" Now, it does not appear, from the record, as it ought, that the debts unpaid were any of them contracted by Burnham, before his distraction. But it does appear, that these pretended guardians were not empowered to sell the real estate, *in the same manner* as executors and administrators are empowered to make sale of the real estate of deceased persons. (*See* 1 *Stat.* 138, *edit. of* 1808. § 49, 54, 55.) But a contrary course was pursued. When application was made for a licence to sell, it was granted forthwith: there was no delay —no notice to heirs, or any one else, as is required in case of application by an executor or administrator for license to sell.

2. In does not appear from the record, that the sale was made by virtue of a licence; for there is no return of the licence or sale on record.—*See* 12 *Mass.* 503.

Such a sale must be void. And in this case, the defendants, one the wife, and the other a son of Rufus Burnham, have a right to question these proceedings.-- *See* 7 *Mass.* 488---the 11 *Mass.* 227, is not *contra.*

*Caveat emptor* applies to purchasers at such sales—they must see to it, that the seller is duly authorized to sell. (*See* 4 *Bin.* 97. 4 *Mass.* 117. 7 *Mass.* 79. 11 *Mass.* 507. 16 *Mass.* 122, 171.) We think it cannot be said, that the judge of probate was empowered to make either the first or second appointment of guardians: but if we misjudge as to· this, we say he had no power to grant the licence to sell the real estate in the way. and manner he did. To wind up; the record shows, that these pretended guardians, on the 27th March, 1815, stated to the judge they had spent all the property of their ward, which came to their hands, and prayed to be discharged; and they were discharged from being guardians any longer, leaving the distracted man to take care of himself! He now wants his property.·

*Smith, pro se.* It is contended by the defendants, that it does not appear from the record, that the said Bass and Burnham were ever appointed guardians over the said Rufus.

The judge of probate derives his power of appointing guardians over idiots, lunaticks, and distracted persons, from the statute. (1 *Stat.* 403. *edit. of* 1808.) The act declares "that the several judges of probate within their respective districts, shall have power, from time to time, upon request made by the friends or relations of any *idiot, non-compos,* or lunatick, or distracted person; or, upon the application of any respectable freeholder of

*Orange,*
February,
. 1826.

Smith, Adm'r
*vs.*
Burnham
*et al.*

the town in which such person lives, or is an inhabitant, to di-rect the selectmen and civil authority of such town to make inquisition thereinto ; and if the person said to be *non-compos*, an idiot, lunatick, or distracted person, shall be adjudged by the selectmen and civil authority aforesaid, or the major part of them, to be incapable of taking care of him or herself, and shall certify the same under their hands to the judge of probate ; the said judge is hereby empowered to appoint some suitable person or persons to be guardian or guardians of such *idiot, lunatick, non-compos,* or distracted person, &c."

Now the record shows, that Enoch Burnham, brother and friend of the said Rufus, on the 24th day of August, 1804, applied to the judge of probate within the district where the said Rufus lived, and represented to the judge the situation of said Rufus ; and requested the judge to appoint a guardian over him, as the law directs.

The judge accordingly sent his order to the selectmen and civil authority of the town of Williamstown, directing them to make inquisition into the situation and circumstances of the said Rufus, and to return their opinion in writing, under their hands, to the judge.

The selectmen and civil authority of the town of Williamstown, attended to the business of their appointment, and made the return which appears in the case.

The defendants object to this return of the selectmen and civil authority of the town of Williamstown ; and contend, that it does not show that they ever held an inquisition on said Rufus, or ever adjudged him to be incapable of taking care of himself. It is true that the return is rather informal ; but it is to be noticed, that the statute has given no form, nor pointed out any expressions, which the selectmen and civil authority are to make use of, in their return to the judge. Again, it is most manifest, that the principal object the legislature had in view, in requiring the judge of probate, on the representation and request of the friends, relatives, &c. for the appointment of a guardian, to send an order of inquisition to the selectmen and civil authority of the town in which such person lives, was, that the judge might be fully satisfied of the truth of the representation made by such friend, relative, or freeholder, and of the necessity of a guardian's being appointed. If, then, we are correct in this position, it is of little consequence what language the inquisitors make use of, in their return to the judge, provided it be sufficiently intelligible to satisfy the judge of the truth of the representation of such friend, relative, or freeholder, and of the necessity of a guardian's being appointed.

Who can doubt, but he who chooses to doubt, what the selectmen and civil authority mean, when they say, "we have examined the above request and situation of the abovesaid Burnham, and give it as our opinion, that the above request is right and reasonable ?" It will be noticed that the judge, in his order to the selectmen and civil authority, to hold inquisition on said

*Orange,*
*February,*
*1826.*

Smith, Adm'r
*vs.*
Burnham
*et al.*

Rufus, mentions the representation that has been made to him by the friends of said Burnham, and the request to have a guardian appointed. The selectmen and civil authority, having the judge's order before them, proceed to hold inquisition on said Rufus, and certify to the judge, that they "have examined the above request of the abovesaid Burnham, and give it as their opinion, that the above request is right and reasonable;" meaning, no doubt, that the above request of Enoch Burnham to have a guardian appointed over said Rufus, as mentioned in the judge's order, was a reasonable request. So the judge understood them to mean, and so must every person understand them to have meant, when their return is taken in connexion with the judge's order of inquisition.

This certificate of the selectmen and civil authority of Williamstown, answered the end the legislature had in view, in rerequiring such an inquisition to be held. It satisfied the judge of probate of the truth of the representation made by Enoch Burnham, friend and brother of Rufus, and of the necessity of appointing a guardian over said Rufus. The judge being satisfied of such necessity, accordingly appointed one over him.

It also appears from the record, that the judge discharged one of the guardians first appointed, and appointed another in his stead. The defendants contend, that the judge of probate, after once having appointed guardians, has no power to discharge them, and appoint others. It is believed, though the statute is silent on this subject, that this power is necessarily implied in the general duty and power of the probate court, and is peculiarly incident to the office of judge of probate; otherwise, if the guardian should himself become a lunatick or distracted person, and incapable of taking care of himself, and be himself put under guardianship, still he must remain the guardian of his ward, so long as they both lived, unless his ward should be restored to his reason. This would be too rigid and absurd a construction to put upon the act. If it will not bear this absurd construction, it must have a more rational one, which will better harmonize with the true spirit and legitimate meaning of the act; which will authorize the judge to discharge one set of guardians, and appoint others in their stead, so often as the necessity of the case requires it, and the incapacity of the ward continues.

It is further contended by the defendants, that, admitting the said Bass and Burnham to have been legal guardians at the time they executed the deed to the intestate, that no title to the land passed by said deed, because, say they, the judge of probate has no authority to authorize a sale of real estate, only when the personal estate is insufficient, and when the debts were contracted by the ward, before his distraction.

The act which authorizes the appointment of guardians, provides "that the guardians shall be subject to the payment of all just debts owing by such person, which were contracted before their distraction, out of their personal estate; or in case that be

Orange,
February,
.1826.

Smith, Adm'r
vs.
Burnham
et al.

insufficient, then out of the real estate, in the way and manner executors or administrators are empowered to make sale of the real estate of deceased persons ; and in case the income or improvement of the personal and real estate of such person shall not be sufficient, then the judge of probate may license and authorize the guardian or guardians to make sale of the whole or part of the real estate of such person, for that purpose, as occasion may require.—1 *Stat.* 404, *edit. of* 1808.

Now then, the statute does authorize the judge to license the guardians to make sale of the whole or part of the real estate of their ward, as well for his or her support, as for the payment of their debts contracted before his or their distraction. So the last objection is wholly without foundation.

The record shows, that the guardians represented to the judge, on the 19th day of November, 1811, that the estate of Rufus Burnham was indebted the sum of fourteen hundred and seventy five dollars, more than the personal estate was sufficient to pay, and therefore prayed licence to sell real estate to raise said sum ; whereupon the judge granted licence to sell the real estate of said Rufus; and the guardians accordingly sold said. land in question, to the. intestate, under the judge's order and licence, and executed the deed to the intestate.

It is further objected by the defendants, that it does not appear from the record, that the guardians were authorized to sell the real estate of their ward, in the same way and manner executors and administrators are empowered to make sale of the real estate of deceased persons ; because, it does not appear from the record, that the judge, before he granted the licence, caused the heirs to the estate, or their guardians, to be notified of the application for the licence, &c.

It is believed, that this last objection is not well supported ; for, if the licence to sell was granted by a court that had jurisdiction of the subject matter, though the Court might have improvidently exercised that jurisdiction, yet the title of the purchaser, under such order, is not to be affected or made void for any irregularity in the proceedings. .

Our statute, which regulates the sale of real estate by executors and administrators, is very similar to the statute of Massachusetts. The statute of 1783 of that state, provides, that executors and administrators, licensed to make sale of real estate of the deceased for the payment of debts, shall, before sale, give bonds to comply with the requisitions of the law; and also give thirty days publick notice thereof, and also take the oath therein prescribed. But it is not necessary, in all cases, that a title to lands, derived from such sale, should be established by proof, that the executor or administrator complied with the requisitions of the law, in these respects.—3 *Mass.* 399.   7 *Mass.* 488.   10 *Mass.* 105.   11 *Mass.* 227.

*Nutting, same side.* The sufficiency or insufficiency of the return of the inquisitors, was a question clearly within the jurisdic-

tion of the probate court: that court decided it sufficient, and appointed a guardian. If that decision was wrong, it should have been reversed by appeal, or otherwise; but till reversed, it is conclusive.---1 *Swift's Dig.* 752, 3, 4.---*Brayt. Rep.* 19, *Collard* vs. *Crane.* 4 *Mass.* 147, *White* vs. *Palmer.*

*Orange,*
*February,*
*1826.*

Smith, Adm'r
*vs.*
Burnham
*et al.*

The intestate's deed from the guardians, with their licence to sell, was sufficient to entitle the plaintiff to recover, without regard to any previous proceedings in the probate court. The granting of the licence was a judicial act of a court of competent jurisdiction, from which an appeal might have been taken, and must be considered conclusive.

In 7 *Mass.* 292, *Leverett* vs. *Harris*, it was decided, that the existence of the facts on which the licence was granted, could not be controverted. "The grantee purchased," say the court, "in reliance on the authority of a court of competent jurisdiction : to deprive him of the property he thus acquired, would be to act in opposition to most established principles."---*See also* 11 *Mass.* 227, *Perkins* vs. *Fairfield.* 7 *Mass.* 488, *Knox et al.* vs. *Jenks.*

The opinion of the Court was delivered by

ROYCE, J. In this case, the title of Rufus Burnham to the lot in question, at and previous to the date of the deed from Joel Bass and Enoch Burnham, to the plaintiff's intestate, is admitted by both parties; and whether the title of Rufus Burnham was conveyed by that deed, is the question now submitted.

The objections raised by the defendants are, to the appointment of Joel Bass and Enoch Burnham, or either of them, as guardians of Rufus Burnham, and to the licence, or authority, under which they executed the deed in question. In support of the first objection, it is contended, that the return to the inquisition was not a sufficient finding of the incapacity of Rufus Burnham, by the selectmen and civil authority of the town, to authorize the judge of probate to appoint a guardian. It is in these words :

"*Williamstown, Sept.* 4, 1804.

"At a meeting of the selectmen and civil authority of said town, and examining the above request, and situation of the above said Burnham, give it as our opinion, that the above request is right and reasonable."

(Signed)          "JOSEPH CRANE" and others.

This is to be taken in connexion with the order of inquisition, to which it was annexed. That order recited, that a representation had been made to the judge, of Rufus Burnham's insanity, with a request that a guardian might be appointed. The return admits of but one construction, which is, that having examined the situation of Burnham, they consider the request to have a guardian appointed, to be right and reasonable. This is a finding, in substance, that Burnham was insane, and incapable of taking care of himself; for that was the subject of their inquiry, contained in the order of inquisition. The probate re-

*Orange,*
*February,*
*1826.*

Smith, Adm'r
*vs.*
Burnham
*et al.*

cords do not show, that any notice was given to the lunatick, either by the inquisitors, or by the judge, to appear and be heard touching his incapacity, and the appointment of guardians. Whatever influence this might have, if Rufus Burnham himself were before the Court, contesting the validity of these proceedings, yet as the statute of 1797 did not direct notice to be given in such a case, and as the guardianship existed so long, without objection on the part of the lunatick, we think this exception cannot avail the defendants. It is therefore considered that the original appointment of Daniel Martin and Joel Bass as guardians of said Burnham, was legally made.

It is next contended, that the discharge of Martin, and the subsequent appointment of Enoch Burnham, were not within the powers of the probate judge. But a power of this kind is evidently vested in the judge, who has the general and only jurisdiction over the subject. Nor can a new representation and inquisition be necessary, upon every change of guardians.

To support the second objection, it is said that the licence to sell the real estate was not legally granted. That licence was founded on a representation of the guardians, that the estate was indebted in the sum of fourteen hundred and seventy-five dollars more than the personal estate was able to pay. It does not appear how much, or whether any of this sum consisted of debts contracted by Burnham, before his distraction, or of expenses incurred in his support; but as the sale of real estate was authorized for both these purposes, and the judge had a competent jurisdiction, the licence must be considered, in this respect, as sufficient, at least, to protect a purchaser. There were no heirs of this living man, to be notified of the intended sale, nor could notice to his children, or other relations, answer the purpose intended by the 49th section of the probate act. That act supposes the estate to have already vested by descent in the heirs, who, by giving bonds for payment of the debts, are but preserving their own estate; whereas, here, the estate is still in the lunatick, and on his recovery, is to be restored to him, unless previously disposed of by his guardians. The title of Rufus Burnham was therefore conveyed by the deed of his guardians, and the plaintiff is entitled to

                                Judgment on the verdict.

*Denison Smith* and *Wm. Nutting,* for plaintiff.
*Nicholas Baylies,* for the defendants.